1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                 FOR THE EASTERN DISTRICT OF CALIFORNIA

10   KRISTINE W. WATSON,

11          Plaintiff,                    No. CIV S-11-2232 DAD

12      vs.

13   MICHAEL J. ASTRUE,                   ORDER
     Commissioner of Social Security,
14
            Defendant.
15   _____/

16          This social security action was submitted to the court without oral argument for

17   ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary

18   judgment.  For the reasons explained below, plaintiff's motion is granted, the decision of the

19   Commissioner of Social Security (the Commissioner) is reversed, and the matter is remanded for

20   further proceedings consistent with this order.

21                          **PROCEDURAL BACKGROUND**

22          On May 25, 2007, plaintiff filed an application for Disability Insurance Benefits

23   (DIB) under Title II of the Social Security Act (the Act), alleging disability beginning on

24   February 10, 2004.  (Transcript (Tr.) at 96, 132.)  Plaintiff later amended her alleged onset date to

25   March 27, 2007.  (Tr. at 30.)  Plaintiff's application was denied initially on January 10, 2008, and

26   upon reconsideration on October 10, 2008.  (Id. at 98-110.)  Plaintiff requested a hearing before

an Administrative Law Judge (ALJ), and a hearing was held November 3, 2009.  (Tr. at 26.)

Plaintiff was represented by counsel and testified at the administrative hearing.  In a decision

issued on December 9, 2009, the ALJ found that plaintiff was not disabled.  (Id. at 14-21.)  The

ALJ entered the following findings:

> 1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.
>
> 2.  The claimant has not engaged in substantial gainful activity since February 10, 2004, the alleged onset date (20 CFR 404.1571 et seq.).
>
> 3.  The claimant has the following severe impairment: neuroma of the left foot (20 CFR 404.1520(c)).
>
> 4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except: occasionally climb ramps, stairs, ladders, ropes and scaffolds; and all other postural limitations limited to a frequent basis.
>
> 6.  The claimant is capable of performing past relevant work as a data entry clerk, billing clerk and bookkeeper.  These positions do not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).
>
> 7.  The claimant has not been under a disability, as defined in the Social Security Act, from February 10, 2004 through the date of this decision (20 CFR 404.1520(f)).

(Id. at 17-21.)

On February 14, 2011, the Appeals Council denied plaintiff's request for review

of the ALJ's decision.  (Id. at 1-4.)  Plaintiff sought judicial review pursuant to 42 U.S.C. §

405(g) by filing the complaint in this action on April 20, 2011.

## LEGAL STANDARD

The Commissioner's decision that a claimant is not disabled will be upheld if the

findings of fact are supported by substantial evidence in the record as a whole and the proper

1  legal standards were applied.  Schneider v. Comm'r of the Soc. Sec. Admin., 223 F.3d 968, 973

2  (9th Cir. 2000); Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999).

3  The findings of the Commissioner as to any fact, if supported by substantial evidence, are

4  conclusive.  Miller v. Heckler, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is such

5  relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

6  Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing Morgan, 169 F.3d at 599); Jones

7  v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985) (citing Richardson v. Perales, 402 U.S. 389, 401

8  (1971)).

9          A reviewing court must consider the record as a whole, weighing both the

10  evidence that supports and the evidence that detracts from the ALJ's conclusion.  Jones, 760 F.2d

11  at 995.  The court may not affirm the ALJ's decision simply by isolating a specific quantum of

12  supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If

13  substantial evidence supports the administrative findings, or if there is conflicting evidence

14  supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive,

15  Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an

16  improper legal standard was applied in weighing the evidence, Burkhart v. Bowen, 856 F.2d

17  1335, 1338 (9th Cir. 1988).

18          In determining whether or not a claimant is disabled, the ALJ should apply the

19  five-step sequential evaluation process established under Title 20 of the Code of Federal

20  Regulations, Sections 404.1520 and 416.920.  Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).

21  The five-step process has been summarized as follows:

22          Step one:  Is the claimant engaging in substantial gainful activity?
          If so, the claimant is found not disabled.  If not, proceed to step
23          two.

24          Step two:  Does the claimant have a "severe" impairment?  If so,
          proceed to step three.  If not, then a finding of not disabled is
25          appropriate.

26  /////

1    Step three:  Does the claimant's impairment or combination of
     impairments meet or equal an impairment listed in 20 C.F.R., Pt.
2    404, Subpt. P, App. 1?  If so, the claimant is automatically
     determined disabled.  If not, proceed to step four.
3
     Step four:  Is the claimant capable of performing his past work?  If
4    so, the claimant is not disabled.  If not, proceed to step five.

5    Step five:  Does the claimant have the residual functional capacity
     to perform any other work?  If so, the claimant is not disabled.  If
6    not, the claimant is disabled.

7    Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

8            The claimant bears the burden of proof in the first four steps of the sequential

9    evaluation process.  Yuckert, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the

10   sequential evaluation process proceeds to step five.  Id.; Tackett v. Apfel, 180 F.3d 1094, 1098

11   (9th Cir. 1999).

12                                    **APPLICATION**

13           Plaintiff argues that the ALJ committed the following four principal errors in

14   finding her not to be disabled: (1) the ALJ improperly rejected plaintiff's own testimony

15   regarding her subjective complaints and functional limitations without a convincing reason for so

16   doing; (2) the ALJ improperly rejected the opinion of plaintiff's treating physician; (3) the ALJ

17   improperly rejected a third party statement regarding plaintiff's functional limitations; and (4) the

18   ALJ erred in finding that plaintiff retained the residual functional capacity to perform her past

19   relevant work.  Each of these arguments are addressed below, although not in the order presented

20   by plaintiff.

21   **I.    Medical Opinions**

22           The weight to be given to medical opinions in Social Security disability cases

23   depends in part on whether the opinions are proffered by treating, examining, or nonexamining

24   health professionals.  Lester, 81 F.3d at 830; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989).

25   "As a general rule, more weight should be given to the opinion of a treating source than to the

26   opinion of doctors who do not treat the claimant . . . ."  Lester, 81 F.3d at 830.  This is so because

                                           4

1  a treating doctor is employed to cure and has a greater opportunity to know and observe the

2  patient as an individual.  Smolen v. Chater, 80 F.3d at 1273, 1285 (9th Cir. 1996); Bates v.

3  Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990).

4        A treating physician's uncontradicted opinion may be rejected only for clear and

5  convincing reasons, while a treating physician's opinion that is controverted by another doctor

6  may be rejected only for specific and legitimate reasons supported by substantial evidence in the

7  record.  Lester, 81 F.3d at 830-31.  The ALJ, however, need not give weight to a treating

8  physician's conclusory opinion supported by minimal clinical findings.  Meanel v. Apfel, 172

9  F.3d 1111, 1113-14 (9th Cir. 1999) (affirming rejection of a treating physician's "meager

10 opinion" as conclusory, unsubstantiated by relevant medical documentation, and providing no

11 basis for finding the claimant disabled); see also Magallanes v. Bowen, 881 F.2d 747, 751 (9th

12 Cir. 1989).

13       "The opinion of an examining physician is, in turn, entitled to greater weight than

14 the opinion of a nonexamining physician."  Lester, 81 F.3d at 830.  An examining physician's

15 uncontradicted opinion, like a treating physician's, may be rejected only for clear and convincing

16 reasons, and when an examining physician's opinion is controverted by another doctor's opinion,

17 the examining physician's opinion may be rejected only for specific and legitimate reasons

18 supported by substantial evidence in the record.  Id. at 830-31.  Finally, "[t]he opinion of a

19 nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection

20 of the opinion of either an examining physician or a treating physician."  Id. at 831 (emphasis in

21 original).

22       Here, with respect to the opinion of Dr. Jacqueline Sotelo, plaintiff's treating

23 physician, the ALJ stated:

24       The record contains two letters from Jacqueline Sotelo, DPM,
         dated November 7, 2008 and March 30, 2009, respectively
25       (Exhibits B10F and B12F).  Dr. Sotelo reported that the claimant
         had been referred to her by Dr. Chang when she moved to Oregon,
26       and that she had treated her since June 2007.  Dr. Sotelo opined

that due to residual nerve damage and pain symptoms in the claimant's lower left extremity status post surgical interventions and failure of conservative treatment, the claimant was unable to sustain competitive employment (Exhibit B10F).  In her second letter, Dr. Sotelo reported that the claimant's pain symptoms could distract her enough to interfere with her focus and concentration on tasks (Exhibit B12F).  Dr. Sotelo also reported that the claimant periodically relied on Vicodin to manage severe pain symptoms and that this could also impair her ability to focus and concentrate. The undersigned has considered Dr. Sotelo's opinion in arriving at the residual functional capacity set forth above.  Dr. Sotelo's assessment was not given significant weight as it was uncorroborated by the full record or her own medical chart notations.  Dr. Sotelo's records show that the claimant is utilizing Vicodin at nighttime when her pain was reported the worst, and not something she used during the day on a sustained or regular basis (Exhibit B13F).  The use of Vicodin during at (sic) nighttime prior to bed, even if it did affect the claimant's ability to focus and concentrate, would not affect her ability to maintain full-time employment during the daytime.  Furthermore, during the hearing, the claimant testified that it was side-effects from her pain medications that precluded sit-down or sedentary style jobs, not distraction of her pain symptoms.  The claimant was reported as relying on pain medications on a limited basis and not letting it interfere with her lifestyle as much as possible (Exhibit B15F/2-3). The claimant was reported with orthotics that helped her alleviate some of her pain symptoms and helped her walk better.  The claimant was reported as relying on more potent pain medications such as the Vicodin after having been on her feet for extended periods of time.  During the course of a normal workday at a sedentary residual functional capacity work, the claimant would be able to stand, walk and sit interchangeably such that the claimant could avoid standing and walking for any significant length of time.  Dr. Chang, who had been the claimant's treating physician for a longer period of time, opined that the claimant could sustain sedentary residual functional capacity work; there was no report that her alleged chronic pain or multitude of prescribed medications would interfere with her ability to do such work (Exhibits B5F and B1F).  Moreover, the conclusion that the claimant is unable to work due to her alleged disabilities is an opinion on an issue reserved to the commissioner under Social Security Ruling 96-5P, and requires vocational expertise outside the purview of the claimant's treating physician.

(Tr. at. 19-20.)

The reasons offered by the ALJ in rejecting Dr. Sotelo's opinions, however, are not supported by substantial evidence in the record.  First, the ALJ asserts that Dr. Sotelo's assessment was not corroborated by her own medical chart notations.  At the outset, the court

1    notes that, "[t]he primary function of medical records is to promote communication and

2    recordkeeping for health care personnel-not to provide evidence for disability determinations.

3    We therefore do not require that a medical condition be mentioned in every report to conclude

4    that a physician's opinion is supported by the record." Orn v. Astrue, 495 F.3d 625, 634 (9th Cir.

5    2007).

6              Nonetheless, Dr. Sotelo's medical chart notations do in fact corroborate her

7    assessment.  In this regard, on October 20, 2009, Dr. Sotelo noted that plaintiff's "left ankle and

8    foot have some swelling today with pitting edema noted behind the lateral malleolus on the left

9    foot," that a scar on plaintiff's left foot was "mildly painful to palpitation" and that there was also

10   "swelling at the dorsum of the foot . . ." (Tr. at 300.)  Dr. Sotelo recommended that plaintiff

11   have "a consultation with a pain specialist . . ." (Tr. at 301.)

12             On September 24, 2008, Dr. Sotelo noted that plaintiff complained of soreness in

13   her foot, swelling "up into her leg" and "in her ankles," "numbness and twitching in her feet at

14   night," and "nerve pain." (Tr. at 276.)  Dr. Sotelo noted that during her examination pain was

15   "elicited with light touch of the skin" and that plaintiff's "left foot has always looked more

16   swollen than the right." (Tr. at 276.)

17             On May 12, 2008, Dr. Sotelo noted "pain to palpation of the medial tubercle right

18   foot" and that plaintiff's "left foot has multiple surgical scars" and has "an element of swelling

19   . . ." (Tr. at 278.)  On February 25, 2008, Dr. Sotelo noted pain and swelling in the second and

20   third left metatarsal heads as well as the third intermetatarsal space. (Tr. at 281.)  The doctor's

21   notations from October 29, 2007, and August 28, 2007, note "pain." (Tr. at 287.)

22             Second, the ALJ cites to a March 31, 2009 progress note in support of the

23   conclusion that Dr. Sotelo's records show that the claimant was utilizing Vicodin only at

24   nighttime when her pain was reported the worst, and that it was not something she used during

25   the day on a sustained or regular basis.  However, Dr. Sotelo's March 31, 2009 progress note

26   actually states merely that in addition to taking amitriptyline plaintiff "takes 1-2 Vicodin at night

                                                      7

to manage the symptoms that seem to be worse at that point." (Tr. at 297.)  The fact that Dr.

Sotelo noted that plaintiff takes Vicodin at night to manage worsened pain symptoms does not

preclude the possibility that plaintiff was taking additional doses of Vicodin throughout the day.

Indeed, Dr. Sotelo regularly refilled Vicodin prescriptions for plaintiff which directed plaintiff to

"TAKE ONE TABLET BY MOUTH EVERY FOUR TO SIX HOURS AS NEEDED FOR

PAIN." (Tr. at 277, 280, 283, 285, 286, 289, 291.)  Thus, the medical records are consistent with

plaintiff's own testimony that she was taking "the Vicodin during the day . . ." (Tr. at 41.)

Third, the ALJ stated that Dr. Chang "opined that the claimant could sustain

sedentary residual functional capacity work" and that Dr. Chang did not "report that her alleged

chronic pain or multitude of prescribed medications would interfere with her ability to do such

work." (Tr. at 20.)  First, this court notes that Dr. Chang's opinion was rendered on May 1,

2007, over 18 months before Dr. Sotelo's November 7, 2008 opinion and almost two years

before  Dr. Sotelo's March 30, 2009 opinion.  The Ninth Circuit has found that medical reports

that are most recent are more highly probative.  See Osenbrock v. Apfel, 240 F.3d 1157, 1165

(9th Cir. 2001) (citing Stone v. Heckler, 761 F.2d 530, 532 (9th Cir. 1985)) (finding medical

evaluations prepared several months before the hearing in a case where the claimant had a

worsening condition were not substantial evidence sufficient to rebut more recent conclusions

reached by a treating physician).

Moreover, it is not clear that Dr. Chang's May 1, 2007 opinion is inconsistent

with Dr. Sotelo's.  In this regard, it is unclear whether Dr. Chang found that claimant could

sustain sedentary residual functional capacity work.  What Dr. Chang did note was that plaintiff

was at the time unable to function "at her job where she has to walk more than 10 or 15 minutes

and stand for that same period of time" and thus, plaintiff "would be best at a sedentary job."

(Tr. at 241.)  Dr. Chang also observed, however, that "it is difficult for her to also travel to her

job, back and forth because of the chronic foot pain that she is having." (Id.)  Moreover, Dr.

Chang noted that, "[a]t this point if she has the ability to work in the home, it makes a big

1  difference" because plaintiff was "not able to commute and walk like we discussed earlier due to
2  her chronic foot and nerve pain."  (Tr. at 241.)

3          Finally, the ALJ rejected treating physician Dr. Sotelo's opinions because "the
4  conclusion that the claimant is unable to work due to her alleged disabilities is an opinion on an
5  issue reserved to the commissioner . . ."  (Tr. at 20.)  However, although "'[t]he administrative
6  law judge is not bound by the uncontroverted opinions of the claimant's physicians on the
7  ultimate issue of disability . . . he cannot reject them without presenting clear and convincing
8  reasons for doing so.'"  Jonker v. Astrue, 725 F. Supp.2d 902, 909 (C.D. Cal. 2010) (quoting
9  Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993)).  Here, the ALJ did not present clear and
10  convincing reasons for rejecting the opinions of plaintiff's treating physician, Dr. Sotelo.

11          In addition, while the ALJ rejected the opinion of plaintiff's treating physician,
12  Dr. Sotelo, the ALJ gave "full weight" to the January 9, 2008 opinion of Dr. Neal Berner.  (Tr. at
13  19.)  Not only is Dr. Berner's opinion more dated than that of Dr. Sotelo, Dr. Berner is a
14  nonexamining physician.  "The opinion of a nonexamining physician cannot by itself constitute
15  substantial evidence that justifies the rejection of the opinion of either an examining physician *or*
16  a treating physician."  Lester, 81 F.3d at 831 (emphasis in original).

17          The court concludes that there was not substantial evidence in the record to
18  support the ALJ's decision to reject the November 7, 2008 and March 30, 2009 opinions of
19  plaintiff's treating physician, Dr. Sotelo.  Accordingly, the court finds that plaintiff is entitled to
20  summary judgment on this claim.

21  **II.    Plaintiff's Testimony**

22          It is well established that once a claimant has presented medical evidence of an
23  underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of
24  his or her symptoms merely because the symptoms are unsupported by objective medical
25  evidence.  Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998); Light v. Soc. Sec. Admin., 119
26  F.3d 789, 792 (9th Cir. 1997).  Indeed, "'the ALJ can reject the claimant's testimony about the

1    severity of [her] symptoms only by offering specific, clear and convincing reasons for doing so.'"

2    Light, 119 F.3d at 792 (quoting Smolen, 80 F.3d at 1281).  In evaluating a claimant's subjective

3    testimony regarding the severity of her symptoms, the ALJ may, of course, consider the presence

4    or absence of supporting objective medical evidence, along with other factors.  Bunnell v.

5    Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (en banc); see also Smolen, 80 F.3d at 1285.

6    However, "'the ALJ can reject the claimant's testimony about the severity of her symptoms only

7    by offering specific, clear and convincing reasons for doing so.'"  Lingenfelter v. Astrue, 504

8    F.3d 1028, 1036 (9th Cir. 2007) (quoting Smolen, 80 F.3d at 1281).  Thus, absent affirmative

9    evidence of malingering, the reasons for rejecting a claimant's testimony must be clear and

10   convincing.  Morgan, 169 F.3d at 599.

11          In the present case, the record establishes that plaintiff's medically determinable

12   impairments could reasonably be expected to produce her symptom of foot pain.  Accordingly,

13   the ALJ was required to evaluate the  intensity, persistence, and limiting effect of plaintiff's

14   symptom to determine the extent to which it limits her ability to engage in basic work activities.

15   The court also notes that there is no suggestion of malingering on plaintiff's part anywhere in the

16   record of this case.  Accordingly, the ALJ was required to provide clear and convincing reasons

17   for rejecting plaintiff's testimony regarding the severity of her symptoms.  See Moisa v.

18   Barnhart, 367 F.3d 882, 885 (9th Cir. 2004) ("If there is no affirmative evidence that the claimant

19   is malingering, the ALJ must provide clear and convincing reasons for rejecting the claimant's

20   testimony regarding the severity of symptoms.").

21          Here, the ALJ rejected plaintiff's testimony that her foot pain required her to

22   elevate her left lower extremity up to four times per day and up to forty minutes at one time.  (Tr.

23   at 40.)  In a somewhat contradictory manner, the ALJ first asserted that there were "no medical

24   records indicating that this is a necessity."  (Tr. at 7.)  However, as noted above, the ALJ may not

25   discredit the claimant's testimony as to the severity of her symptoms merely because the

26   symptoms are unsupported by objective medical evidence.  See Rollins v. Massanari, 261 F.3d

853, 859 (9th Cir. 2001) ("Instead, the ALJ must discredit the claimant's subjective testimony by finding that she is not credible."); see also Vasquez v. Astrue, 572 F.3d 586, 592 (9th Cir. 2009) ("To support a lack of credibility finding, the ALJ was required to 'point to specific facts in the record which demonstrate that [Vasquez] is in less pain than she claims.'") (quoting Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993)).

The ALJ then noted that Dr. Nolan, who examined plaintiff on December 30, 2007, opined that plaintiff "would benefit from the opportunity to have left leg elevation during sitting" but the ALJ concluded that Dr. Nolan's finding "was only a recommendation." (Tr. at 20, 249.) It seems quite logical that the benefit to plaintiff that Dr. Nolan was referring to was a reduction in the pain she would experience.

For these reasons, the court finds that the ALJ's decision to discredit plaintiff's testimony is not supported by specific, clear and convincing reasons. Accordingly, the court finds that plaintiff is also entitled to summary judgment on this claim.

## III.   **Third-Party Statements**

The testimony of lay witnesses, including family members and friends, reflecting their own observations of how the claimant's impairments affect her activities must be considered and discussed by the ALJ. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006); Smolen, 80 F.3d at 1288; Sprague, 812 F.2d at 1232. Persons who see the claimant on a daily basis are competent to testify as to their observations. Regennitter v. Comm'r of Soc. Sec. Admin., 166 F.3d 1294, 1298 (9th Cir. 1999); Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993). If the ALJ chooses to reject or discount the testimony of a lay witness, he or she must give reasons germane to each particular witness in doing so. Regennitter, 166 F.3d at 1298; Dodrill, 12 F.3d at 919. The mere fact that a lay witness is a relative of the claimant cannot be a ground for rejecting the witness's testimony. Regennitter, 166 F.3d at 1298; Smolen, 80 F.3d at 1289. Nor does the fact that medical records do not corroborate the testimony provide a proper basis for rejecting such testimony. Smolen, 80 F.3d at 1289. It is especially important for the

1   ALJ to consider lay witness testimony from third parties where a claimant alleges symptoms not

2   supported by medical evidence in the file and the third parties have knowledge of the claimant's

3   daily activities. 20 C.F.R. § 404.1513(e)(2); SSR 88-13.

4           Questions of credibility and the resolution of conflicts in the testimony are usually

5   deemed functions solely of the Commissioner. Morgan, 169 F.3d at 599.  The determination of

6   credibility is said to be a function of the ALJ acting on behalf of the Commissioner. Saelee, 94

7   F.3d at 522.  As a general rule, an ALJ's assessment of credibility should be given great weight.

8   Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985).  Ordinary techniques of credibility

9   evaluation may be employed, and the adjudicator may take into account prior inconsistent

10  statements or a lack of candor by the witness.  Fair, 885 F.2d at 604 n.5.

11          Here, the ALJ recounted the third party statement of plaintiff's husband, stating:

12          The record also contains a third party function report by Steve
            Watson, the claimant's husband dated September 4, 2007 (Exhibit
13          B4E).  Mr. Watson reported that his wife's typical day consisted of
            taking a shower, preparing light meals, performing light household
14          chores, and sitting on the couch with her feet elevated to read.  The
            claimant was reported unable to do a lot of walking, but able to
15          perform light household chores such as laundry and watering plants
            on the porch.  The claimant was reported as retaining the ability to
16          drive; she went grocery store shopping about twice per week.  Mr.
            Watson reported that his wife was not able to pay attention for
17          long; she was reported with focus and concentration difficulties
            after the early evening due to her use of Vicodin, but she was
18          reported as having the ability to watch television, read and crochet
            during the day and into the early evening with no difficulties.  The
19          claimant was reported as able to walk through half the grocery
            store before requiring rest or needing to sit for 10 to 15 minutes.
20          Mr. Watson's report was taken into consideration in arriving at the
            residual functional capacity set forth above.

21

22  (Tr. at 20.)

23          Although the ALJ's opinion purports to take Mr. Watson's third-party statement

24  into consideration in arriving at plaintiff's residual functional capacity, the ALJ's residual

25  functional capacity determination makes no mention of any limitation to plaintiff's ability tp

26  concentrate or her need to elevate her feet, both of which were indicated by Mr. Watson's

1  statement.  As noted above, if the ALJ chooses to reject or discount the testimony of a lay

2  witness, he must give reasons germane to each particular witness in doing so.  <u>Regennitter</u>, 166

3  F.3d at 1298; <u>Dodrill</u>, 12 F.3d at 919.  Here, the ALJ offered no reason for essentially rejecting or

4  discounting Mr. Watson's statement.

5     Accordingly, the court also finds that plaintiff is entitled to summary judgment on

6  this claim.

7  **IV.**   **Past Relevant Work**

8     Plaintiff argues that substantial evidence does not support the ALJ's finding that

9  she has the residual functional capacity ("RFC") to perform her past relevant work.

10     A claimant's RFC is "the most [the claimant] can still do despite [his or her]

11  limitations."  20 C.F.R. § 404.1545(a).  The assessment of RFC must be "based on all the

12  relevant evidence in [the claimant's] case record."  <u>Id.</u>  <u>See also</u> <u>Mayes v. Massanari</u>, 276 F.3d

13  453, 460 (9th Cir. 2001).  The Commissioner may satisfy his burden of showing that the claimant

14  can perform past relevant work or other types of work in the national economy by taking the

15  testimony of a vocational expert (VE).  <u>Burkhart</u>, 856 F.2d at 1340; <u>Polny v. Bowen</u>, 864 F.2d

16  661, 663 (9th Cir. 1988).

17     Here, the ALJ's decision states that the VE testified at the administrative hearing

18  that plaintiff's past relevant work consisted of daycare worker, data entry clerk, billing clerk,

19  caregiver and bookkeeper.  (Tr. at 20-21.)  The ALJ went on to find that:

20      In comparing the claimant's residual functional capacity with the
    physical and mental demands of the above listed jobs, the

21      undersigned finds that the claimant is able to perform her past
    relevant work as a data entry clerk and bookkeeper as actually and

22      generally performed in the national economy.

23  (Tr. at 21.)

24     Above, however, the court has determined that the ALJ improperly rejected the

25  November 7, 2008, and the March 30, 2009 opinions of plaintiff's treating physician, Dr. Sotelo,

26  and improperly rejected plaintiff's testimony and the third party statement of plaintiff's husband

13

regarding the extent to which the claimant's impairments affect her activities.  Presumably as a result of this error, the ALJ did not ask the VE any hypothetical questions which included the significant work-related limitations indicated by that evidence.  See Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988) ("Hypothetical questions posed to the vocational expert must set out *all* the limitations and restrictions of the particular claimant, including, for example, pain and an inability to lift certain weights.") (emphasis in original).  Indeed, the ALJ failed to ask the VE any hypothetical questions, determining that the resolution of plaintiff's claim "boils down to basically she can either do the sedentary work or not, that simple."  (Tr. at 46.)

Thus, the ALJ's failure to properly credit the evidence discussed above led to the erroneous exclusion of significant limitations from the ALJ's RFC determination.  Moreover, when plaintiff's counsel posed hypothetical questions to the VE that included the limitations indicated by Dr. Sotelo's opinions, plaintiff's testimony and the third party statement provided by plaintiff's husband, the VE indicated that plaintiff could not perform her past relevant work.  For example, plaintiff's counsel asked the VE a hypothetical that assumed an RFC limited to sedentary work and "limited to simple tasks and instructions because of complications related to pain symptoms as well as pain medication" and the VE testified that such an individual with those limitations "wouldn't be able to perform the past jobs."  (Tr. at 47.)  Similarly, when plaintiff's counsel asked the VE to consider the same hypothetical but without the limitation to unskilled work and with the limitation that the person would need to elevate their leg three times a day for 30 to 40 minutes each time, the VE testified that she did not "think they could perform" the past relevant work.  (Tr. at 47.)

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'"  Robbins v. Social Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006).  Here, the ALJ failed to consider all the /////

1 relevant evidence in determining plaintiff's RFC.  Accordingly, the court finds that plaintiff is

2 entitled to summary judgment in her favor with respect to this claim as well.

### CONCLUSION

4       The decision whether to remand a case for additional evidence or to simply award

5 benefits is within the discretion of the court.  Ghokassian v. Shalala, 41 F.3d 1300, 1304 (9th Cir.

6 1994); Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990).  The Ninth Circuit Court of Appeals

7 has stated that, "[g]enerally, we direct the award of benefits in cases where no useful purpose

8 would be served by further administrative proceedings, or where the record has been thoroughly

9 developed." Ghokassian, 41 F.3d at 1304 (citing Varney v. Sec'y of Health & Human Servs.,

10 859 F.2d 1396, 1399 (9th Cir. 1988)).  This rule recognizes the importance of expediting

11 disability claims.  Holohan, 246 F.3d at 1210; Ghokassian, 41 F.3d at 1304; Varney, 859 F.2d at

12 1401.

13       Here, the court finds that due to the errors noted above the ALJ's residual

14 functional capacity finding is not supported by substantial evidence in the record as a whole and,

15 therefore, the ALJ's finding at step four of the sequential evaluation, that plaintiff can perform

16 her past relevant work, is in error and the matter must be remanded for further findings and to

17 proceed with the sequential analysis.

18       On remand, the medical opinions shall be given proper weight, and the subjective

19 testimony of plaintiff and the third party statement of her husband shall be considered in keeping

20 with the applicable legal standards.  Plaintiff's residual functional capacity shall be reconsidered

21 in light of all of plaintiff's impairment and the entire record.  If the sequential evaluation

22 proceeds to step five, the ALJ shall hold a new hearing at which plaintiff testifies and proper

23 hypothetical questions are presented to a vocational expert in a manner that takes into account all

24 of the limitations on plaintiff's ability to engage in work-related functions.  Therefore, in this

25 case further administrative proceedings are necessary.

26 /////

1        In accordance with the above, IT IS HEREBY ORDERED that:

2        1.  Plaintiff's December 29, 2011 motion for summary judgment (Doc. No. 27) is

3   granted;

4        2.  Defendant's March 1, 2012 cross-motion for summary judgment (Doc. No. 31)

5   is denied;

6        3.  The decision of the Commissioner of Social Security is reversed; and

7        4.  This case is remanded for further proceedings consistent with this order.

8   DATED: September 20, 2012.

9

10                                        _____

11                                        DALE A. DROZD
                                          UNITED STATES MAGISTRATE JUDGE

12

13   DAD:6
     Ddad1/orders.soc sec/watson2232.order

14

15

16

17

18

19

20

21

22

23

24

25

26